J-S52016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DURELL HERMAN COTTON, JR. | |
| Appellant | No. 1843 MDA 2016 |

Appeal from the Judgment of Sentence August 29, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005729-2015

BEFORE:  GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 10, 2017**

Durell Herman Cotton, Jr. appeals from the judgment of sentence, entered in the Court of Common Pleas of York County, following his conviction of first-degree murder, criminal conspiracy to commit murder, criminal attempt to commit first-degree murder and aggravated assault.[1] We affirm based on the well-reasoned opinion authored by the Honorable Maria Musti Cook.

The facts of this case were summarized by the trial court as follows:

On October 15, 2013, at approximately 10:24 p.m., York City Police responded to the area of North Newberry Street and West Gas Avenue to investigate a report of shots fired in the area. Upon arrival at the 300 block of West Gas Avenue[,] police observed people looking at the ground in the parking area, mid-block on the north side of the street.  Police further observed

---

[1] 18 Pa.C.S.A. §§ 2502(a), 903(a), 2502(a) and 2702(a)(1), respectively.

multiple shell casings on the ground along with tinted window glass shards. As police were investigating the 300 block of West Gas Avenue, they received a radio call for officers to respond to 128 Jefferson Avenue to investigate two gunshot victims at that location. Upon arrival, officers located Jordan Breeland in the back seat of a gold Buick Rendezvous. The alleged second victim, Davon Brown, could not be located but police did eventually establish contact with him at the hospital upon notice that Brown was in triage being evaluated.

Breeland had a visible gunshot wound to the chest and police removed him from the vehicle in an attempt to perform emergency care until advanced life support arrived. Breeland subsequently died at the scene. On October 16, 2013, a forensic autopsy was performed on Breeland that ruled his death a homicide with the cause being a gunshot wound to the chest.

The driver of the vehicle, Davon Brown, received treatment for a gunshot wound to his left hand and a small wound on his right wrist at Wellspan York Hospital. Brown told police that he was driving the gold Buick with Timiere Crosby in the front passenger seat and Breeland seated in the rear of the vehicle. As they were driving in the 300 block of West Gas Avenue, a SUV type vehicle pulled up to their vehicle and individuals in the car fired into the SUV being driven by Brown.

On October 16, 2013, at approximately 1:40 a.m., York City Police detectives, Detective Sowers and Detective Spence, arrived at 39 [South] Belvidere Street to speak with a witness regarding the homicide, when a radio broadcast for shots fired in the area of Belvidere and Market Street[s] was received. As these detectives approached the intersection of Belvidere and Market Street[s], gunshots could be heard coming from east of their location. Detective Spence contacted County Control and a perimeter was established in the area. After the perimeter was established, police officers began searching the area for the source of the gunshots.

At 2:55 a.m., Trooper Panchik of the Pennsylvania State Police located two possible suspects who began to flee from the area of Hartley and Philadelphia Street[s]. The two suspects were seen throwing handguns as they fled from police. The suspects were apprehended after [a] foot pursuit and both handguns were eventually recovered. The suspects were identified as Durell

Cotton [] and Elvin Mateo [].  Both suspects were wearing black jackets at the time of their arrest.

Dashboard surveillance was utilized in determining what actors threw which gun when they were fleeing from police. [Cotton] was later determined to have attempted to dispose of a Smith and Wesson 10-millimeter handgun and [Mateo] attempted to dispose of a .357 Rossi handgun.  Both of the handguns were sent for ballistic analysis and it was determined that a bullet fragment recovered inside the Buick Rendezvous originated from the .357 Rossi firearm.

Gunshot Residue Analysis was conducted on both [Cotton's] and [Mateo's] clothing and hands. The tests established the existence of gunshot residue on both [Cotton's] and [Mateo's] clothing and hands.

Thomas Hoke, who was working in the area at the time of the shooting, stated that he observed a maroon or red in color SUV occupied by two black males drive away from the area of the shooting at a high rate of speed heading towards Philadelphia Street. One of the vehicle's occupants was wearing a black jacket.

On October 16, 2013, Belinda Akers contacted Lower Windsor Police Department regarding damage to her 2003 Mercury Mountaineer SUV. This vehicle is a maroon in color SUV and she reported that she loaned her vehicle to a male and when it was returned the rear window was shattered. She stated that on the evening of the homicide, she loaned her vehicle to a young black male and an hour after the shooting the male called a friend of Aker's and told her where it was parked. Akers then located her vehicle with the new damage. Akers identified [Cotton] from an eight (8) person photo line-up as being the black male she loaned her SUV to on the night of the murder.

Photographs of Aker's Mercury Mountaineer were shown to [] Hoke and he stated that it appeared to be the same color and body type of the vehicle he observed fleeing the scene immediately after the shooting.

On July 21, 2015, police interviewed Raymond Bruno-Carrasquillo regarding this incident. Bruno-Carrasquillo was with Defendant Cotton just prior to the shooting and was with both

defendants on later dates where details of the murder were discussed. [Mateo] told Bruno-Carrasquillo that they were "lurking" for targets from the Parkway gang, the gang [with] which [] Breeland and [] Brown were allegedly associated. [Mateo] told Bruno-Carrasquillo that on the night of the alleged incident he and Defendant Cotton were in a SUV that [Cotton] had 'rented' from an addict. [Mateo] further stated to Bruno-Carrasquillo that they had come across a gold in color SUV driven by [] Brown and he had a .357 handgun while [Cotton] possessed a 10-millimeter handgun. [Mateo] stated that he had fired into the driver[] and passenger side[s] of the vehicle. Additionally, [Mateo] said that later that same evening police chased both [Cotton and Mateo] and they attempted to throw away their guns.

On May 20, 2016, at the conclusion of the trial, a jury unanimously found both [Cotton] and [Mateo] guilty of: (1) first-degree murder, (2) criminal conspiracy to commit murder in the first degree, (3) criminal attempt to commit murder in the first degree, and (4) aggravated assault.

On August 29, 2016, [Cotton] was sentenced to an aggregate sentence of forty-five (45) years['] to life incarceration followed by a term of twenty (20) to forty (40) years['] incarceration. On September 7, 2016, Defendant, by and through his attorney, John M. Hamme, Esquire, filed a [p]ost-[s]entence [m]otion moving for a new trial based on sufficiency of the evidence and weight of evidence claim[s]. Additionally, the Motion requested this [c]ourt to reconsider [Cotton's] sentence based on the claim that this [c]ourt used an erroneous prior record score when sentencing [Cotton]. On October 12, 2016, this [c]ourt denied [Cotton's] [p]ost-[s]entence Motion.

On October 31, 2016, [Cotton] filed a [p]ost–[s]entence [m]otion for [e]xtraordinary [r]elief, which again requested this [c]ourt to re-sentence using the correct prior record score. On November 9, 2016, this [c]ourt held a hearing to address [Cotton's] motion and re-sentenced based on the correct prior record score. This [c]ourt vacated [Cotton's] previous sentence imposed on Count Two (2), Murder of the First Degree, and sentenced to 39 1/2 years' to life imprisonment.

On November 9, 2016, [Cotton] filed a timely notice of appeal. On November 22, 2016, this Court ordered [Cotton] to file a

- 4 -

[Pa.R.A.P.] 1925(b) statement of errors complained of on appeal.

Trial Court Opinion, 2/10/17, at 2-8. On December 12, 2016, Cotton timely filed a Rule 1925(b) statement. On appeal, Cotton raises the following issues:

1. Whether the Commonwealth failed to present sufficient evidence to convict Cotton of murder of the first degree, criminal attempt to commit murder of the first degree, aggravated assault and criminal conspiracy to commit murder of the first degree?

2. Whether the verdicts of guilty of murder of the first degree, criminal conspiracy to commit murder of the first degree, criminal attempt to commit murder in the first degree and aggravated assault were against the weight of the evidence presented at trial?

Brief of Appellant, at 4 (rewritten for brevity).

Our standard for evaluating sufficiency of the evidence is,

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Fortson*, 165 A.3d 10, 15 (Pa. Super. 2017) (citation omitted).

Additionally, our standard of review for evaluating a weight claim is as follows:

> A motion for new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inference of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011) (citation omitted).

To obtain a conviction of first-degree murder, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill. *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa. Super. 2016). A person is guilty of attempted murder if he takes a substantial step towards an intentional killing. *Commonwealth v. Wesley*, 860 A.2d 585, 593 (Pa. Super. 2004). "A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another[.]" 18 Pa.C.S.A. § 2702

(a)(1). Lastly, to sustain a conviction for criminal conspiracy, the Commonwealth must prove beyond a reasonable doubt that the defendant entered into an agreement to commit or aid in a criminal act with another person or persons with a shared criminal intent and that an overt act was done in furtherance of the conspiracy. *Commonwealth v. Johnson*, 920 A.2d 873, 878 (Pa. Super. 2007).

After our review of the briefs and the record, and the well-reasoned opinion of Judge Cook, we conclude that the trial court has thoroughly analyzed each of these claims, set forth the applicable legal authority, and correctly determined that each claim lacks merit. Accordingly, we affirm on the basis of the trial court's opinion. *See generally* Trial Court Opinion, 2/10/17, at 9-29 (evidence was sufficient to prove Cotton shared with Mateo the specific intent to murder Jordan Breelend and Davon Brown, and acted with malice in doing so; additionally, evidence does not shock court's sense of justice, such as to warrant the granting of a new trial.). We direct the parties to attach a copy of Judge Cook's opinion in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2017

IN THE COURT OF COMMON PLEAS OF YORK COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF        :         NO. CP-67-CR-5729-2015
PENNSYLVANIA             :
                           :
                           :
                           :

DURELL H. COTTON JR.,         :
     Appellant                .

STATEMENT OF LOWER COURT PURSUANT TO
PA.R.A.P. 1925(a)

AND NOW, this .2 : day of February 2017, upon receipt of a

notice that an appeal has been filed in this matter, and in consideration of the

Concise Statement of Matters Complained Of on Appeal filed on behalf of

Durell H. Cotton, Jr. ("Defendant"), by and through his attorney, John M.

Hamme, Esquire, the undersigned files this statement pursuant to Pa.R.A.P.

19250.

     The reasons for this Court's denial of Defendant's post-sentence motion

can be found herein.

1

## FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with the following offenses: (l) Criminal Conspiracy to Murder of the First Degree under 18 Pa, C.StA. § 903(a)(l), 18 Pa. C.S.A. § 2501(a); (2) Murder of the First Degree under 18 Pa. C.S.A. § 2502(a)•, (3) Murder of the Third Degree under 18 Pa. C.S,A. § 2502(c); (4) Criminal Attempt to Murder of the First Degree under 18 Pa. C.S.A. § 901(a), 18 Pa. C.S.A, § 25020; and, (5) Aggravated Assault under 18 Pa. C.S.A. § 2702(a)(1).

The incident giving rise to the above listed charges occurred as follows. On October 15, 2013, at approximately 10:24 P.M., York City Police responded to the area of North Newberry Street and West Gas Avenue to investigate a report of shots fired in the area. Upon arrival at the 300 block of West Gas Avenue police observed people looking at the ground in the parking area, mid-block on the north side of the street. Police further observed multiple shell casings on the ground along with tinted window glass shards. As police were investigating the 300 block of West Gas Avenue, they received a radio call for officers to respond to 128 Jefferson Avenue to investigate two gunshot victims at that location.

2

Upon arrival, officers located Jordan Breeland in the back seat of a gold Buick Rendezvous. The alleged second victim, Davon Brown, could not be located but police did eventually establish contact with him at the hospital upon notice that Brown was in triage being evaluated.

Breeland had a visible gunshot wound to the chest and police removed him from the vehicle in an attempt to perform emergency care until advanced life support arrived. Breeland subsequently died at the scene. On October 16, 2013, a forensic autopsy was performed on Breeland that ruled his death a homicide with the cause being a gunshot wound to the chest,

The driver of the vehicle, Davon Brown, received treatment for a gunshot wound to his left hand and a small wound on his right wrist at Wellspan York Hospital. Brown told police that he was driving the gold Buick with Timiere Crosby in the front passenger seat and Breeland seated in the rear of the vehicle. As they were driving in the 300 block of West Gas Avenue, a SUV type vehicle pulled up to their vehicle and individuals in that car began firing into the SUV being driven by Brown.

3

On October 16, 2013, at approximately 1:40 A.M., York City Police detectives, Detective Sowers and Detective Spence, arrived at 39 S. Belvidere Street to speak with a witness regarding the homicide, when a radio broadcast for shots fired in the area of Belvidere and Market Street was received. As these detectives approached the intersection, of Belvidere and Market Street, gunshots could be heard coming from east of their location, Detective Spence contacted County Control and a perimeter was established in the area. After the perimeter was established, police officers began searching the area for the source of the gunshots.

At 2:55 A.M., Trooper Panchik of the Pennsylvania State Police located two possible suspects who began to flee from the area of Hartley and Philadelphia Street. The two suspects were seen throwing handguns as they fled from police. The suspects were apprehended after the foot pursuit and both handguns were eventually recovered. The suspects were identified as Durell Cotton, "Defendant," and Elvin Mateo, "CoDefendant." Both suspects were wearing black jackets at the time of their arrest.

4

Dashboard surveillance was utilized in determining what actor threw which gun when they were fleeing from police. Defendant Cotton was later determined to have attempted to dispose of a Smith and Wesson 10-milimeter handgun and Co-Defendant Mateo attempted to dispose of a .357 Rossi handgun. Both of the handguns were sent for ballistic analysis and it was determined that a bullet fragment recovered inside the Buick Rendezvous originated from the .357 Rossi firearm.

Gunshot Residue Analysis was conducted on both Defendant Cotton's and Co-Defendant Mateo's clothing and hands. The tests established the existence of gunshot residue on both Defendant's and CoDefendant's clothing and hands.

Thomas Hoke, who was working in the area at the time of the shooting, stated that he observed a maroon or red in color SUV occupied by two black males drive away from the area of the shooting at a high rate of speed heading towards Philadelphia Street. One of the vehicle's occupants was wearing a black jacket.

On October 16, 2013, Belinda Akers contacted Lower Windsor Police Department regarding damage to her 2003 Mercury Mountaineer SUV. This vehicle is a maroon in color SUV and she reported that she

loaned her vehicle to a male and when it was returned the rear window was shattered, She stated that on the evening of the homicide, she loaned her vehicle to a young black male and an hour after the shooting the male called a friend of Aker's and told her where it was parked. Akers then located her vehicle with the new damage, Akers identified Defendant Cotton from an eight (8) person photo line-up as being the black male she loaned her SUV to on the night of the murder,

Photographs of Aker's Mercury Mountaineer were shown to Thomas Hoke and he stated that it appeared to be the same color and body type of the vehicle he observed fleeing the scene immediately after the shooting,

On July 21, 2015, police interviewed Raymond Bruno-Carrasquillo regarding this incident. Bruno-Carrasquillo was with Defendant Cotton just prior to the shooting and was with both defendants on later dates where details of the murder were discussed. Co-Defendant Mateo told Bruno-Carrasquillo that they were "lurking" for targets from the Parkway gang, the gang to which Jordan Breeland and Davon Brown were allegedly associated, Co-Defendant Mateo told Bruno-Carrasquillo that on the night of the alleged incident he and Defendant Cotton were in a SUV that

6

Defendant Cotton had "rented" from an addict. Defendant Mateo further stated to Bruno-Carrasquillo that they had come across a gold in color SUV driven by Davon Brown and he had a .357 handgun while Defendant Cotton possessed a 10-milimeter handgun. Co-Defendant Mateo stated that he had fired into the driver's and passenger side of the vehicle. Additionally, Co-Defendant Mateo said that later that same evening police chased both defendants and they attempted to throw away their guns.

On May 20, 2016, at the conclusion of the trial, a jury unanimously found both Defendant Cotton and Co-Defendant Mateo guilty of; (1) firstdegree murder, (2) criminal conspiracy to commit murder in the firstdegree, (3) criminal attempt to commit murder in the first-degree, and (4) aggravated assault.

On August 29, 2016, Defendant was sentenced to an aggregate sentence of forty-five (45) years to life incarceration followed by a term of twenty (20) to forty (40) years incarceration. On September 7, 2016, Defendant, by and through his attorney, John M. Hamme, Esquire, filed a Post-Sentence Motion moving for a new trial based on a sufficiency of the evidence and weight of evidence claim. Additionally, the Motion requested this Court to reconsider Defendant's sentence based on the claim

7

that this Court used an erroneous prior record score when sentencing Defendant. On October 12, 2016, this Court denied Defendant's PostSentence Motion.

On October 31, 2016, Defendant filed a Post-Sentence Motion for Extraordinary Relief, which again requested this Court to re-sentence the Defendant using the correct prior record score. On November 9, 2016, this Court held a hearing to address Defendant's motion and re-sentenced the Defendant based on the correct prior record score. This Court vacated Defendant's previous sentence imposed on Count Two (2), Murder of the First Degree, and sentenced the Defendant to 39 $^{1}/2$ years to life imprisonment.

On November 9, 2016, Defendant filed a timely notice of appeal. On November 22, 2016, this Court ordered Defendant to file a 1925(b) Statement of Errors Complained of on Appeal.

On December 12, 2016, Defendant filed a timely 1925(b) Statement raising two main issues. In summary, they are as follows; (l) that the Commonwealth failed to present sufficient evidence to support the jury's verdict on all charges, and (2) that the jury's verdict as to all charges was against the greater weight of the evidence presented at trial.

8

## DISCUSSION

Pursuant to his Statement of Errors, Defendant's first five claims assert the Commonwealth failed to present sufficient evidence to support his convictions beyond a reasonable doubt on the following charges; (I) Murder of the First Degree under 18 Pa. CSA. § 2502(a)•, (11) Murder of the Third Degree under 18 Pa, CSA. § 2502(c); (Ill) Criminal Attempt to Murder of the First Degree under 18 Pa. C.S.A. § 901 (a), 18 Pa, C.S.A. § 2502(a); (IV) Aggravated Assault under 18 Par C.StA, § 2702(a)(l); and (V) Criminal Conspiracy to Criminal Homicide under 18 Pa, C.S.A. § 18 Pa. C.S.A. § 2501(a).

When a defendant asserts a sufficiency of the evidence claim, the evidence must be reviewed "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Commonwealth v. Widmer, 744 A,2d 745, 751 (Pa. 2000), (citing Commonwealth v. Chambers, 599 A.2d 630 (Pa. 1991)), "A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Commonwealth v.

9

Widmer, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations, footnotes, and quotation marks omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Commonwealth v. Ventura, 975 A.2d 1 128, 1142 (Pa, Super. 2009), (citing Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa. Super. 2007). Further, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances."

Defendant's five insufficiency arguments go to the legal question of whether Defendant could be convicted under 18 Pa. C.S.A. § 2502(a); 18 Pa, CSA. § 2502(c); 18 Pa. C.S.A. § 901(a), 18 Pa. C.S.A, § 2502(a)•, 18 Pa, C.S.A, § 2702(a)(1); 18 Pa, CSA. § 18 Pa. CSA. § 2501 (a). This Court will examine each conviction individually.

10

1. WHETHER THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVIDENCE TO CONVICT APPELLANT OF MURDER OF THE FIRST DEGREE WHEN THE EVIDENCE PRESENTED AT TRIAL FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT APPELLANT, A PRINCIPAL, ACCOMPLICE OR CO-CONSPIRATOR, INTENTIONALLY AND MALICIOUSLY CAUSED THE DEATH OF JORDAN BREELAND?

Pursuant to his 19250 Statement, Defendant first alleges that the Commonwealth failed to present sufficient evidence that would establish that Defendant, as a principal, accomplice or co-conspirator, intentionally and maliciously caused the death of Jordan Breeland. Statement of Matters Complained of Under Pa. R.A.P. 1925(b), December 12, 2016.

For a person to be found guilty of first-degree murder, the Commonwealth must prove beyond a reasonable doubt that: (l) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and, (3) the accused acted with specific intent to kill, 18 Pa.C.S. § 2502(a), Commonwealth v. Spotz, 759 A.2d 1280, 1283 (Pa. 2000), cert. denied, 534 U.s. 1104, 122 s.ct. 902, 151 L.Ed.2d 871 (2002). An intentional killing is a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). "The Commonwealth may prove specific intent through

purely circumstantial evidence." Commonwealth v, Haney, 131 A.3d 24, 36 (Pa. 2015).

Malice necessary to support a murder conviction can be established where "the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury," Commonwealth v. Packer, 2016 WL 3613038 (Pa.Super. filed 7/6/1 6) (defining malice). "Malice may be inferred by considering the totality of the circumstances." Commonwealth v. Thompson, 106 A.3d 742, 757 (Pa. super. 2014), app. denied, 134 A.3d 56 (Pa. 2016).

In finding that the evidence presented by the Commonwealth at trial is sufficient to sustain Defendant's conviction of first-degree murder, this Court looks to the evidence presented by the Commonwealth. The testimony during trial showed that the Defendant and his co-defendant inflicted a gunshot wound upon the victim, Jordan Breeland, resulting in his death, The gunshot wound was to a vital party of the victim's body.

Raymond Bruno-Carrasquillo, a long-time acquaintance of Defendant testified that Defendant and his co-defendant had previously taken a gun from Shy McDowell, an alleged associate of the Parkway gang, the gang the Defendant and his co-defendant were allegedly feuding

12

with. (N.T. Trial, May 18, 2016, at 415). This resulted in the members of the Parkway gang coming into what Defendant considered to be part of his neighborhood, Liberw Court, and "shooting up Liberty." (Id, at 415), Bruno-Carrasquillo testified that at that point Defendant and his codefendant decided to retaliate. (Id. at 417). Co-Defendant established there to be an "on sight order" for any member of the Parkway gang which instructed the members of Defendant's gang to "shoot at" "anybody that you see at any time," and to "go at them." (Id. at 429).

Bruno-Carrasquillo stated that he found out Jordan Breeland, an alleged member of the Parkway gang, had been shot the morning after the alleged incident. (Id. at 422). That same morning, Bruno-Carrasquillo was directed to go look for a 10-millimeter pistol that Defendant supposedly shot and then discarded the night before. (Id. at 423), Bruno-Carrasquillo testified Defendant later told him, Bruno-Carrasquillo, that Defendant and his co-defendant had pulled up to the vehicle in which the victim was a passenger on the night of the alleged incident and fired into the car. (Id. at 426). Additionally, Bruno-Carrasquillo stated that on the night of the alleged incident Defendant was in a burgundy in color SUV that he had borrowed from a friend. (Id. at 420).

13

Marcos Martinez, an acquaintance of the Defendant who has known the Defendant since middle school and associated with him almost daily, corroborated Bruno-Carrasquillo testimony by testifying that Defendant told him he and another person, Defendant's passenger, his co-defendant, were out driving on the night of the alleged incident and spotted a person Defendant's passenger did not like. (Id. at 292, 293, 296), Defendant's passenger subsequently jumped out of the vehicle Defendant was driving, ran down to the other vehicle, started shooting, and then ran back to the Defendant's car and drove away, (Id. at 296).

Further, the Commonwealth presented testimony from Belinda Akers, who shortly after the alleged incident contacted the Lower Windsor Police Department regarding damage to her 2003 Mercury Mountaineer SUV. (Ids at 365, 369, 373), Ms. Akers stated she had lent her maroon in color SUV to a male and it was returned with a shattered rear window. (Id. at 356, 364). When presented with a photo,,lineup of eight individuals, Ms. Akers identified Defendant as the person she lent her SUV to on the night of the murder. (Id. at 369). Further, upon examination, Defendant's cell phone contained text massages from Ms. Aker's cell phone connecting

14

Defendant's cell phone to the maroon Mercury Mountaineer. (N.T. Trial, May 19, 2016, at 656).

Additionally, Thomas Hoke, who was working in the area of the murder on the night of the alleged incident, testified that he had heard a series of gunshots and then saw a maroon or red SUV occupied by two black males drive away from the area of the shooting at a high rate of speed. (N.T. Trial, May 17, 2016 at 161-163).

On the night of the alleged incident, the Pennsylvania State Police apprehended Defendant and his co-defendant after receiving a report for shots fired in the area of Belvidere and Market Street. (Id- at 252). Defendant and his co-defendant fled from the police on foot and it was later determined, through the review of dash camera video, that during the pursuit Defendant attempted to dispose of a handgun. (N.T. Trial, May 19, 2016, at 566). The night after the alleged incident, Police investigators recovered a Smith and Wesson 10-milimeter handgun upon conducting a search of the area in which Defendant apprehended. (Id. at 566).

15

Gunshot Residue Analysis was later conducted on Defendant's clothing and hands and these tests established the existence of particles highly specific to the discharge of a firearm. (N.T. Trial, May 17, 2016 at 219-220).

The jury also heard testimony regarding Defendant's co-defendant's involvement in the murder. According to Bruno-Carrasquillo, Defendant's co-defendant had told him that he and Defendant had been driving around "lurking" for victims from the Parkway gang. (N.T. Trial, May 18, 2016, at 424). Bruno-Carrasquillo stated that Defendant's co-defendant stated they had pulled up to the victim's car and he, the co-defendant, had shot into the car firing at both the driver and the passenger and left them "stinking." (Id. at 425-426). Defendant's co-defendant was also found to be in possession of a firearm on the night of the alleged incident and one of the bullets found in the victim's car matched the firearm the co-defendant was determined to have carried. (N.T. Trial May 19, 2016, at 563, 566, 582, 656).

The facts of this case clearly permit a trier of fact to find the presence of malice and intent to convict Defendant of first-degree murder beyond a reasonable doubt. Testimony shows that Defendant and/or his

16

co-defendant inflicted a fatal gunshot wound upon the victim resulting in his death, The Commonwealth was under no requirement to prove that Defendant himself inflicted the fatal blow that killed Jordan Breeland; only that Defendant possessed the specific intent and malice individually or with his co-defendant to kill the victim, Commonwealth v. Rios 721 A.2d 1049 (Pa. 1998).

The evidence of record clearly denotes Defendant and his codefendant possessed the collective intent to murder Jordan Breeland, with both Defendant and his co-defendant taking an active role in the facilitation, planning, and actual murder of the victim. The evidence showed that the intent to kill the victim was willful, deliberate, and premeditated. The Defendant borrowed the car from Ms. Akers specifically to aid in the retaliation against the Parkway gang. He, along with his co-defendant, went "lurking" for victims on the night of the alleged incident. Defendant was carrying a firearm and was determined to have gunshot residue on his hands and clothing. Defendant made admissions to two close acquaintances that he had been involved in the killing. Herein, malice can be inferred both in the egregious nature of the

17

killing and the fact that a deadly weapon was used on a vital part of Jordan Breeland's body.

Under the above circumstances, this Court finds the evidence is sufficient to prove that the defendant shared with his co-defendant the specific intent to kill Jordan Breeland, and acted with malice in doing so. These facts are sufficient to sustain the defendant's conviction for murder of the first degree.

11. WHETHER THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVDENCE TO CONVICT APPELLANT OF MURDER OF THE THIRD DEGREE WHEN THE EVIDENCE PRESENTED AT TRIAL FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT APPELLANT, AS A PRINCIPAL, ACCOMPLICE OR CO-CONSPIRATOR, MALICIOUSLY CAUSED THE DEATH OF JORDAN BREELAND?

Next, Defendant asserts that the trial evidence was insufficient as a matter of law to sustain the jury's findings of guilt for third-degree murder as a principal, accomplice or co-conspirator in the death of Jordan Breeland. However, Defendant asserts this claim in error. The jury never found Defendant guilty of third-degree murder. Pursuant to the verdict slip, the jury was only to consider convicting Defendant on the thirddegree charge if they found Defendant not guilty on the first-degree

18

murder charge. As discussed above, Defendant was found guilty on the charge of first-degree murder and thus the charge of third-degree murder of the same victim became irrelevant since a finding of guilt on third,, degree murder would merge with the conviction of first-degree murder for sentencing purposes.

111. WHETHER THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVIDENCE TO CONVICT APPELLANT OF CRIMINAL ATTEMPT TO COMMIT MURDER OF THE FIRST DEGREE WHEN THE EVIDENCE PRESENTED AT TRIAL FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT APPELLANT, WITH THE INTENT TO COMMIT THE CRIME OF MURDER OF THE FIRST DEGREE, TOOK A SUBSTANTIAL STEP TOWARDS THAT CRIME BY SHOOTING DAVON BROWN, OR ACTING AS AN ACCOMPLICE IN THE COMMISSION OF THE CRIME.

Further, Defendant argues that there was insufficient evidence to convict him of Criminal Attempt to Commit First-Degree Murder under 18 Pa. C.S.A, § 901(a), 2502(a). Under Section 901(a), "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." Pa, C.S,A. § 901(a). As discussed previously, a person is guilty of firstdegree murder under Section 2502 if by means of any kind of willful,

19

deliberate and premeditated killing, intentionally kills another. 18 Pa.C.S.A. § 2502(a), (d). Therefore, evidence is sufficient to sustain a conviction of criminal attempt to commit murder of the first degree when the Commonwealth establishes a person "[took] a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." Commonwealth v. Hobson 604 A.2d 717, 719 (Pa. Super. 1992) (citations omitted)."

Defendant claims the evidence presented was insufficient to convict him on the charge because the evidence failed to establish that he, with the intent to commit first-degree murder, took a substantial step towards that crime by shooting Davon Brown or acting as an accomplice in the commission of the crime. However, the evidence presented by the Commonwealth suggests otherwise.

As previously indicated, there was sufficient evidence for the jury to find that Defendant had the specific intent to kill. The evidence is clear that Defendant and his co-defendant were seeking retribution on the Parkway gang for the shooting that occurred on Liberty Court the night of the alleged incident. After the shooting in Liberty Court, testimony established that Defendant's co-defendant instructed there to be an "on

20

sight order" for any member of the Parkway gang. (N.T. Trial, May 18 2016, at 429). The "on sight order" instructed the members of Defendant's gang to "shoot at" "anybody that you see at any time," and to "go at them." (Id.). There was sufficient testimony for a jury to find that Defendant agreed to go "lurking" for victims with his co-defendant on the night of the alleged incident. Additionally, evidence was presented that links Defendant to arranging for the use of the vehicle used in commission of the crime and that Defendant himself was the driver during the alleged incident. Such evidence is sufficient for a jury to find that Defendant had the specific intent to kill and took a substantial step towards committing such a crime.

IV. WHETHER THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVIDENCE TO CONVICT APPELLANT OF AGGRAVATED ASSAULT WHEN THE EVIDENCE PRESENTED AT TRIAL FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT APPELLANT, INTENTIONALLY, IOK)WINGLY OR RECKLESSLY, UNDER CIRCUMSTANCES MANIFESTING EXTREME INDIFFERENCE TO THE VALUE OF HUMAN LIFE, CAUSED OR ATTEMPTED TO CAUSE SERIOUS BODILY INJURY TO DAVON BROWN.

Defendant's next issue questions whether the evidence presented at trial was sufficient to sustain a conviction for aggravated assault of Davon

21

Brown. In relevant part, 18 Pa.C.S,A, § 2702 states a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa,C.S.A. § 2702(a)(1).

The Commonwealth's evidence has been summarized above. The Jury was presented with sufficient evidence to conclude beyond a reasonable doubt that Defendant participated in the alleged incident that resulted in the bodily injury to Davon Brown. Defendant either caused or attempted to cause serious bodily injury to Mr. Brown under circumstances manifesting extreme indifference to the value of human life.

Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," 18 Pa.C.S.A. § 2301. "Bodily injury" is defined as the 'impairment of physical condition or substantial pain." Id, unquestionable that under the definitions provided within the Pennsylvania Crimes Code, the victim, Devon Brown, suffered serious bodily injury. As a direct result of the alleged incident, Mr. Brown received freatment for a

22

gunshot wound to his left hand and a small wound on his right wrist at Wellspan York Hospital. A gunshot wound that tears into a hand qualifies as a serious bodily injury.

Even if the Defendant was not the one who fired the shots at Devon Brown, there is sufficient evidence to find Defendant guilty beyond a reasonable doubt based on accomplice liability. Another person can be found equally criminally liable for the acts of another, even if he is not the actual perpetrator of the crime, if he aids the other in the commission of the crime with the intent of encouraging the other's act. Commonwealth v. Causey, 833 A.2d 165, 172 (Pa. super. 2003).

The Commonwealth presented an abundance of evidence that established Defendant was the driver of the vehicle during the commission of the aggravated assault and that he arranged for the use of the vehicle prior to the alleged crime. Again, this Court believes the evidence at trial was sufficient to find that Defendant knew and intended to accompany his co-defendant in "lurking" for victims on the night of the alleged incident. Both defendants were determined to have possessed firearms on the night of the alleged incident and both defendant's clothing and hands tested

23

positive for gunshot residue. Accordingly, there is sufficient evidence to support the jury's verdict that Defendant is guilty of aggravated assault.

> V. WHETHER THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVIDENCE TO CONVICT APPELLANT OF CRIMINAL CONSPIRACY TO COMMIT MURDER OF THE FIRST DEGREE WHEN THE EVIDENCE PRESENTED AT TRIAL FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT APPELLANT, CONSPIRED WITH ANY OTHER PERSON TO COMMIT THE CRIME OF MURDER IN THE FIRST DEGREE.

The Defendant was convicted of Criminal Conspiracy to Commit Murder in the First-Degee under 18 Pa. C.S.A. § 18 Pa. C.S.A. § 2501(a). Herein, the Defendant alleges the Commonwealth failed to present sufficient evidence to convict Defendant on the charge. This Court finds this claim entirely without merit.

In order to sustain a conviction for criminal conspiracy, the Commonwealth must establish beyond a reasonable doubt that the defendant "(l) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and,

(3) an overt act was done in furtherance of the conspiracy.'

Commonwealth v. Rios, 684 A.2d 1025, 1030 (Pa. 1996), cert. denied, 520

U.S. 1231, 117 s.ct. 1825, 137 L.Ed.2d 1032 (1997), (citing 18 Pa.C.S.A,

24

§ 903). The defendant need not actually commit the required overt act; he will nevertheless be liable if a co-conspirator commits such an act. Commonwealth v. Thln, 496 A,2d 1254, 1256 (Pa. super. 1985).

To establish the charge of conspiracy to commit first-degree murder, the Commonwealth holds the burden of proving that the defendant agreed with another person to participate in the facilitation of first-degree murder and commit an overt act in continuation of the conspiracy. 18 Pa. Cts. § 903.

Here, Defendant specifically claims that the Commonwealth failed to present sufficient evidence that Defendant conspired with another person to commit the crime of murder in the first degree. The Pennsylvania Superior Court has held that "[a]n agreement sufficient to establish a conspiracy can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." Commonwealth v. Rivera 637 A.2d 997, 998 (Pa. super. 1994) (en banc).



The evidence presented by the Commonwealth was more than sufficient to show that Defendant and his co-defendant acted jointly in causing the death of Jordan Breeland. The record is clear that Defendant and his co-defendant shared the intent to kill any member of the Parkway gang they encountered on the night of the alleged incident. The Defendant took a substantial step toward implementing the conspiracy when he arranged to borrow Belinda Aker's vehicle for the specific purpose of "lurking" for victims with his co-defendant, Both defendants were armed with deadly weapons and Defendant appeared to be abiding by his co [w] defendant's "on sight order." While Defendant may or may not have shot into Devon Brown's vehicle himself, his co-defendant has expressly admitted to such conduct. Because the conspiracy was already established at that point, the actions of Defendant's co-defendant may be imputed to Defendant. "[T]he law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy." Commonwealth v. Geiger,

944 A.2d 85, 91 (Pa. super. 2008).

Accordingly, there is sufficient evidence to establish that Defendant agreed with his co-defendant to commit first-degree murder, both defendants had the specific intent necessary for first-degree murder, and both defendants committed several overt acts in furtherance of that conspiracy. Thus, Defendant's claim that the evidence at trial was insufficient to establish that he conspired with any other person to commit the crime of murder in the first degree lacks merit.

### VI. WHETHER THE VERDICTS OF GUILTY OF MURDER IN THE FIRST DEGREE, CRIMINAL CONSPIRACY TO COMMIT MURDER IN THE FIRST DEGREE, CRIMINAL ATTEMPT TO coMMIT MURDER IN THE FIRST DEGREE AND AGGRAVATED ASSAULT WERE AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL?

We review Defendant's final claim based on the following standard:

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

27

Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations and quotes omitted).

The Supreme Court has stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Commonwealth v. Brown 648 A.2d 1 177, 1189 (Pa. 1994), quoting Thompson v. City of Philadelphia, 493 A.2d 669, 672 (Pa. 1985). In denying Defendant's post-sentence motion, this Court's sense of justice was not shocked by the verdict.

The verdicts returned by the jury were not against the weight of the evidence, and the Defendant is not entitled to a new trial. The jury, as the trier of fact, was "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Champney, 832 A.2d 403, 408 (Pa. 2003) (quoting Commonwealth v. Small, 741 A.2d 666 (Pa. 1999)). Notably, this jury chose to believe the testimony of Raymond Bruno-Carrasquillo, Marcos Martinez and other Commonwealth witnesses that called into question Defendant's imocence.

28

This Court finds the verdict returned was properly based upon the evidence and does not shock this Court's sense of justice, such as to warrant the granting of a new trial.

CONCLUSION

Based on the above reasons, this Court respectfully urges affirmance of this Court's Order dated October 12, 2016,

The Clerk of Courts is directed to provide notice of the entry of this Statement to counsel of record,

BY THE COURT,

MARIA MUSTI COOK, JUDGE

29

## IN THE SUPERIOR COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH of Pennsylvania,<br>Appellee,<br><br>v.<br><br>DURELL H. COTTON, JR.,<br>An Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1843 MDA 2016 |

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing document upon the persons and in the manner indicated below which service satisfies the requirements of Pa. R.A.P. 121 :

<u>Service via certified mail as follows:</u>
Jennifer Traxler, Esquire
Prothonotary, Middle District
Superior Court of Pennsylvania
Pennsylvania Judicial Center
P.O. Box 62435
601 Commonwealth Avenue, Suite 1600
Harrisburg, PA 17106-2435

<u>Service in person as follows</u>:
Thomas L. Keamey, Ill, Esquire
York County Office of the District Attorney
York Judicial Center
45 North George Street
York, PA 17401

Date: 5/4/17

o n M. Hamme preme Court
Idl No, 200360
1946 Carlisle Road
York, Pennsylvania 17408
Phone: (717) 764-5926

Attorney for Appellant